UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES T., [1]<br><br>            Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No.: 22cv0694-SBC<br><br>**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW IN FAVOR OF PLAINTIFF AND REMANDING TO THE COMMISSIONER**<br><br>**[ECF NO. 20]** |

James T. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") regarding the denial of Plaintiff's application for disability benefits and supplemental security income. (ECF No. 1.) The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and denied Plaintiff's claim for benefits from April 1, 2018, through the date of the decision, April 15, 2021. (AR at 38.)

---

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

Now pending before the Court is the parties' Joint Motion for Judicial Review, filed on February 27, 2023. (ECF No. 20.)

After considering the parties' submissions, the administrative record, and the applicable law, for the reasons stated below, the Court **REVERSES** the Commissioner's decision, and **REMANDS** the matter to the Commissioner for further administrative action consistent with the findings presented herein.

## I.   PROCEDURAL BACKGROUND

On December 12, 2018, Plaintiff filed a Title II application for Social Security Disability Insurance, in which he alleged a disability beginning on April 1, 2018. (ECF No. 11 at 208-211 [Administrative Record "AR"].) The Commissioner denied Plaintiff's claim initially on June 5, 2019, and on reconsideration on August 26, 2019[2]. (AR at 83, 111.) On October 25, 2019, Plaintiff filed a written request for a *de novo* hearing. (*Id*. at 117-118.) ALJ James Delphey presided over the hearing on March 9, 2021. (AR at 44-71.) Plaintiff appeared at the hearing via telephone, represented by his counsel, Brian Mosich. (*Id*.) Plaintiff and Vocational Expert, Robin Scher, testified at the hearing. (*Id*.)

On April 15, 2021, the ALJ issued an unfavorable decision denying Plaintiff's request for disability benefits. (AR at 23-25.) On April 11, 2022, the Appeals Council denied Plaintiff's request for review. (*Id*. at 1-5.) On that date, the ALJ's decision became the final decision of the Commissioner. (42 U.S.C. § 405(h).) Having exhausted all administrative remedies, Plaintiff brought this timely civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (*See* ECF No. 1.)

## II.   SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had

---

[2] The ALJ's decision states the reconsideration decision issued on August 9, 2019. (AR at 26.) The Administrative Record, however, states the decision issued on August 26, 2019. (AR at 111.) The date discrepancies do not change the outcome of this decision.

not engaged in substantial gainful activity since April 1, 2018, the alleged onset date. (AR at 28.) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) vestibular disorder NOS; (2) hypertension; and (3) migraine headaches. (*Id.*) Plaintiff also had non-severe impairments of asthma, left ulna fracture status post ORIF, obesity, anxiety, and depressive disorder. (*Id.* at 29.) The ALJ found the impairments as non-severe because ". . . they did not have more than a minimal effect on the claimant's ability to do basic work activities." (*Id.*) The ALJ proceeded to consider Plaintiff's impairments at step three of the sequential process.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the relevant section of the Commissioner's Listing of Impairments[3]. (AR at 32.) Regarding vestibular disorder NOS, the ALJ stated that "[Plaintiff] does not have disturbance of labyrinthine-vestibular function characterized by a history of frequent attacks of balance, disturbance, tinnitus, and progressive loss of hearing with disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests and hearing loss established by audiometry. His disequilibrium stabilized with physical therapy and medication. He does not require an assistive device to walk." (*Id.*) Regarding Plaintiff's hypertension, the ALJ stated that ". . . there is no evidence in the medical file of a specific body system so affected as to meet a listing in the instant case." (*Id.*) The ALJ also stated that "there is no indication that the claimant's migraine headaches, alone or in combination with any other impairment, has given rise to a condition of listing-level severity (SSR 19-4p)." (*Id.*)

When a claimant's impairments, or combination of impairments, do not meet the criteria of a listed impairment, as was the case here, the ALJ next determines the claimant's

---

[3] If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR §§ 404.1509 and 416.909), the claimant is deemed disabled. If it does not, the analysis proceeds to the next step.

residual functional capacity ("RFC"), i.e., the ability to do physical and mental work activities despite the claimant's impairments. (AR at 27-28.) Step four then considers whether the claimant is not disabled because he has the RFC to do past relevant work, and step five looks at the claimant's ability to do any other work considering his RFC, age, education, and work experience. (*Id*. at 29)

The ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (AR at 37.) The ALJ concluded, however, that considering Plaintiff's age, education, work experience and RFC, ". . . there were jobs that existed in significant numbers in the national economy that the claimant could have performed through the date last insured." (*Id*. at 23.) The ALJ accepted the testimony of the vocational expert, who said Plaintiff could perform the requirements of Food Service Worker, Hospital (D.O.T. 319.677-014), Sandwich Maker (D.O.T. 317.664-010), and Sweeper/Cleaner, Industrial (D.O.T. 389.683-010). (*Id*. at 37-38.)

In reaching his decision, the ALJ assessed Plaintiff as retaining the RFC to perform a range of medium work as defined in as defined in 20 C.F.R. §§ 404.1567(c), with the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolding; can frequently balance, stoop, and crouch; can occasionally kneel and crawl; needs to avoid any work at unprotected heights or adjacent to dangerous, moving machinery; needs to avoid any work that involves driving a motor vehicle or any kind of vehicle as a duty of a job; needs to avoid concentrated exposure to dust, odors, fumes, or other pulmonary irritants; needs to avoid flashing lights at the work station and any lighting brighter than natural daylight or artificial lighting as is customary in a business, office, clinic, or factory environment; needs convenient restroom access; and needs to avoid concentrated exposure to extreme cold or extreme heat.

(AR at 32.)

The ALJ stated that the RFC assessment was based on ". . . all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and

SSR 16-3p." (*Id*. at 32.) The ALJ also considered the medical opinions and prior administrative medical findings in accordance with 20 CFR 404.1520c. (*Id*.) The ALJ, therefore, concluded that Plaintiff was not disabled, as defined in the Social Security Act, from the alleged onset date of April 1, 2018, through the date of the decision, April 15, 2021. (*Id*. at 38.)

### III. ISSUE IN DISPUTE

The sole issue in dispute is whether the ALJ properly considered Plaintiff's subjective statement testimony. (ECF No. 20 at 4.)

### IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error. *Id*.; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (Under 20 C.F.R. § 404.1520(c), "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.")

"Substantial evidence means more than a mere scintilla but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs*., 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).

An ALJ's decision is reversed only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." (*Id*.) "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." (*Id*.) "The ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## V.   DISCUSSION

### A.   Whether the ALJ Failed to Properly Evaluate Plaintiff's Subjective Statements

An ALJ assesses a claimant's subjective statements regarding his or her symptoms and limitations in two parts. §§ 404.1529(a), 416.929(a). First, an ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." (*Id.*). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Ragudo v. Saul*, 411 F. Supp. 3d 1125, 1133-34 (S.D. Cal. 2019) (citing *Smolen*, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ "determine[s] credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."

*Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *Burrell v. Colvin*, 775 F. 3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's testimony about the intensity of her . . . symptoms").

In assessing a claimant's statements about his or her symptoms, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (listing factors) (citation omitted).

While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain . . . it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Social Security Ruling (SSR) 16-3p (S.S.A. Oct. 25, 2017) (SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").[4]

---

[4] Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy" to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . .

### 1. Plaintiff's Subjective Statements

At the March 9, 2021 administrative hearing, the ALJ asked Plaintiff about his physical impairments. (AR at 44-71.) Plaintiff testified to suffering from vertigo and disequilibrium, and he stated that prescriptions and physical therapy have not helped, and instead, have made his symptoms worse. (*Id*. at 51)

Plaintiff further testified to experiencing symptoms of disequilibrium "all day," and nausea most mornings. (AR at 60.) Plaintiff stated that he often lays on the floor and avoids standing and walking. (*Id*.) Plaintiff's nausea causes him to lose his appetite, and he sometimes drinks Ensure (a protein supplement) because he worries about not eating enough. (*Id*. at 61.) Plaintiff also experiences migraines approximately five days a week, depending on how bright it is outside. (AR at 62.) Even with Plaintiff's prescription sunglasses, he gets nauseas from the light outside. (*Id*.)

To navigate around his apartment, Plaintiff uses the walls for support. (*Id*. at 61.) Plaintiff can wash dishes, but sometimes he drops dishes, and if nauseous or dizzy, he gets low to the floor to avoid falling. (*Id*. at 61.) Plaintiff stated he cannot lift anything because of difficulty with bending down. (*Id*. at 62.) Without aid, Plaintiff can stand for two to three minutes before falling. (*Id*. at 63.) If Plaintiff starts walking around, he has difficulty balancing because the floor and walls feel like they are moving. (*Id*. at 52.) Plaintiff stated that he broke his arm due to a fall, and that he fears further falls. (*Id*. at 53.)

Plaintiff also testified to being treated for anxiety and depression. (AR at 63.) Plaintiff stated that not working and not being able to take care of himself makes him depressed. (*Id*.) Plaintiff feels anxious going outside due to COVID and his health conditions, so he spends most of his time inside ". . . because going outside isn't in [his] best interest." (AR at 53.) Plaintiff stated that some days he just sits inside and cries. (*Id*. at 56.)

---

[and] more closely follow [SSA] regulatory language regarding symptom evaluation." *See* SSR 16-3p, 2017 WL 5180304, at 1-2, 10-11.

Additionally, Plaintiff will only walk outside of his apartment complex when his son can help, and his son will grab his shirt or wrap something around Plaintiff to help him walk and to avoid falls. (*Id*. at 56.) Plaintiff will not go anywhere unless his son can drive him. (*Id*.) Plaintiff stated that he once took the bus to a medical appointment, but "[he] had never been so scared in [his] life." (*Id*. at 56-57.) Plaintiff's son also helps Plaintiff with paying bills, picking up groceries, and showering. (*Id*. at 52-62.)

### 1. The ALJ's Analysis of Plaintiff's Subjective Statements

The ALJ's decision noted the following of Plaintiff's alleged impairments:

> [Plaintiff] alleges that his impairments affect his ability to walk, balance, lift, bend, and complete tasks. His alleged symptoms include vertigo, disequilibrium, dizziness, falls, imbalance, nausea, headaches, light sensitivity, high blood pressure, depressed mood, tearfulness, and anxiety. With regard to his daily activities, he alleges that he no longer drives, but he has a driver's license. He alleges that he can barely tie his shoes. He can do household chores.

(AR at 33.) The ALJ found that the record established medically determinable impairments that could reasonably be expected to cause Plaintiff's alleged symptoms, but he rejected Plaintiff's symptom testimony, finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully supported by the record. (AR at 34.)

In making the determination, the ALJ stated the following:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the objective medical evidence indicates that the claimant's symptoms improved and stabilized with treatment, including physical therapy and medication. He does not require an assistive device to walk. His blood pressure is controlled with medication when he takes it as prescribed. His reported daily activities suggest a greater level of functioning than alleged. His disequilibrium issues would preclude the performance of his past relevant work as a Crane Operator, but would not preclude the performance of other medium work with appropriate postural limitations and environmental protections. (*Id*. at 34-35.)

This finding meets the threshold with respect to part one. Next, because there was no finding that Plaintiff was malingering, the ALJ was required to make specific findings stating clear and convincing reasons for discounting Plaintiff's subjective statements. *See Smolen*, 80 F.3d at 1283-84.

### a. Improvement with Treatment

First, the Court considers the ALJ's determination that Plaintiff's subjective statements are inconsistent with the medical record because Plaintiff's ". . . symptoms improved and stabilized with treatment, including physical therapy and medication." (AR at 34.) Plaintiff argues that the ALJ's conclusion is not supported by the record, and it does not take Plaintiff's subjective statements into account. (ECF No. 20 at 8.) Defendant counters that the medical record does in fact show that Plaintiff's impairments improved with treatment, and the ALJ properly found that Plaintiff's medical history is inconsistent with his statements. (*Id.* at 13-14.)

The issue, however, is whether the ALJ properly discounted Plaintiff's statements. While "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony," an ALJ must still "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Carmickle v. Commissioner, Social Sec. Admin*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Reddick*, 157 F.3d at 722. Here, in finding that Plaintiff's subjective statements were inconsistent with the record because of improvement with treatment, the ALJ did not identify which statements he was rejecting, instead, the ALJ simply outlined Plaintiff's medical history and highlighted that Plaintiff does not require an assistive device to walk. (*See* AR at 26-38); *see Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (holding that even though the ALJ provided "a relatively detailed overview of claimant's medical history, providing a summary of medical evidence ... is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible").

Furthermore, the ALJ failed to consider or properly reject Plaintiff's statements that his impairments have worsened with medication and physical therapy. (AR at 51-52.) At the administrative hearing, Plaintiff stated that doctors have tried to treat his vertigo and

disequilibrium with different medications, but it has only made the problem worse. (*Id*. at 51.) Plaintiff also stated that balance therapy did not help "at all," and that he lays on the floor to avoid standing or walking. (*Id* at 52.) The ALJ merely stating that Plaintiff's symptoms improved and stabilized with treatment is not sufficient for rejecting Plaintiff's statements. The ALJ cannot discredit Plaintiff's symptom testimony without identifying which of Plaintiff's statements are found incredible. *Contreras v. Saul*, 477 F.Supp.3d 1107, 1122 (S.D. Cal. 2020) (holding that because the ALJ failed to identify which statements he found as incredible, the ALJ's summary of the medical record and opinion evidence were legally insufficient to discount Plaintiff's credibility).

Therefore, the Court finds the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's subjective statements.

### b. Daily Activities

Next, the Court considers the ALJ's determination that Plaintiff's ". . . reported daily activities suggest a greater level of functioning than alleged," and that he is "independent with daily activities and he can do household chores." (AR at 31.) Plaintiff argues that the ALJ erred because he did not address which daily activities were allegedly inconsistent with the record. (ECF No. 20 at 8.) Defendant counters that the ALJ properly found Plaintiff's statements inconsistent with the medical record because Plaintiff reported that he was independent in his daily living activities at a consultative examination in May 2019. (*Id*. at 13.)

As a preliminary matter, the Court does not find Defendant's argument persuasive. The issue before the Court is whether the ALJ properly discounted Plaintiff's statements. As previously discussed, while "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony," an ALJ must still "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Carmickle v. Commissioner, Social Sec. Admin*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Reddick*, 157 F.3d at 722.

Here, in support of the finding that Plaintiff's is higher functioning than alleged and independent in his daily activities, the ALJ merely cited to a May 2019 exam where

Plaintiff reported that he was independent in his daily living activities. (*See* AR at 26-38.) The ALJ highlighted the reported activities, noting that Plaintiff is capable of "dressing, bathing, making meals, doing household chores, and shopping," and that Plaintiff can walk on his own, drive when it is not too sunny outside, manage his own money, watch television, listen to music, play boardgames, and go out with his children." (AR at 30.) Plaintiff correctly argues that the ALJ failed to identify which statements were inconsistent with the medical record when concluding that Plaintiff's ". . . reported daily activities suggest a greater level of functioning than alleged." (AR at 34.) *See Smolen*, 80 F.3d at 1284 ([a]n ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Rios v. Saul*, No. 19CV704-LL, 2020 WL 71080, at *5 (S.D. Cal. Jan. 7, 2020).

Furthermore, the ALJ omitted relevant testimony from the 2021 administrative hearing that further defined the scope of Plaintiff's activities. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (finding ALJ's selective daily activity findings were erroneous for failing to note plaintiff had to rest between activities, needed help to do the activities, and could not always complete the activities given her symptoms). For instance, Plaintiff stated this he is not able to care for himself as his son helps him with paying bills, picking up groceries, and showering. (AR at 52-62.) Regarding household chores, Plaintiff stated that he "will wash a dish," but he drops dishes if nauseous or dizzy. (AR at 61.) Regarding making meals, Plaintiff stated that he sometimes drinks Ensure (a protein supplement) because he worries about not eating enough. (*Id*. at 61.) Regarding driving, Plaintiff will not drive, and he will not go anywhere unless his son can drive him. (*Id*. at 56.) Plaintiff also stated that he will only walk outside of his apartment complex when his son can help, and his son will grab his shirt or wrap something around Plaintiff to help him walk and to avoid falls. (*Id*.) Additionally, Plaintiff stated that he does not like to watch television often because it makes him anxious. (*Id*. at 55.)

The ALJ failed to consider Plaintiff's stated limitations by only reciting Plaintiff's capabilities from a 2019 consultative report. Furthermore, the ALJ did not identify which

statements he was rejecting. Therefore, the Court finds the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's subjective statements.

### c. Need for Indoor Sunglasses

Plaintiff also argues that the ALJ erred because he did not consider Plaintiff's need for indoor sunglasses when "lights are too bright." (ECF No. 20 at 9.) Defendant argues that there is no medical evidence in support of the need to wear sunglasses inside, such as a prescription or recommendation from a medical provider. (*Id*. at 15-16.)

While Defendant is correct, the Court finds that the ALJ still considered Plaintiff's sensitivity to light as a limitation resulting from Plaintiff's migraines[5]. First, the ALJ found that Plaintiff's migraine headaches constituted a severe impairment. (AR at 28.) Second, the ALJ accounted for Plaintiff's migraines and sensitivity to light in his RFC determination, by including ". . . [Plaintiff] needs to avoid flashing lights at the work station and any lighting brighter than natural daylight or artificial lighting as is customary in a business, office, clinic, or factory environment. (AR at 32.)

Moreover, Plaintiff failed to argue that he is more functionally limited than his RFC determination, and he does not explain how there would have been a different outcome if the ALJ had considered his need for indoor sunglasses. An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1054 (9th Cir. 2006)). The Court finds that although the ALJ did not expressly consider Plaintiff's need for indoor sunglasses, the ALJ accounted for Plaintiff's sensitivity to light. Therefore, the Court finds that it was, at most, harmless error to omit discussion of Plaintiff's indoor sunglasses.

### d. Assistive Device

Lastly, Plaintiff argues that the ALJ failed to take Plaintiff's statements into account regarding his difficulty with balancing, and therefore, the ALJ erred when concluding that

---

[5] At the administrative hearing, Plaintiff stated that he experiences migraines approximately five days a week depending on how bright it is outside. (AR at 62.)

Plaintiff does not require an assistive device. (ECF No. 20 at 9.) Defendant maintains that the ALJ properly considered all the conflicting evidence when carefully tailoring Plaintiff's RFC. (*Id*. at 12.)

Again, the issue before the Court is whether the ALJ properly discounted Plaintiff's statements. As previously discussed, while "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony," an ALJ must still "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Carmickle v. Commissioner, Social Sec. Admin*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Reddick*, 157 F.3d at 722. Here, at step three, the ALJ concluded that Plaintiff's disequilibrium stabilized with physical therapy and medication. (AR at 32.) In Plaintiff's RFC determination, the ALJ found that Plaintiff ". . . can frequently balance, stoop, and crouch; can occasionally kneel and crawl." (AR at 32.) The ALJ also noted that Plaintiff does not require an assistive device to walk. (*Id*.)

However, Plaintiff has expressed many times that he has difficulty with balancing. For example, Plaintiff testified at the administrative hearing to experiencing symptoms of disequilibrium "all day," and nausea most mornings. (AR at 60.) Plaintiff often lays on the floor and avoids standing and walking. (*Id*.) Plaintiff uses walls for support to navigate around his apartment. (*Id*.) Plaintiff gets low to the floor to avoid falling when feeling nauseous or dizzy. (*Id*. at 52.) Plaintiff also stated that his son ties a shirt around him to help him balance when walking outside. (AR at 56.) Without aid, Plaintiff stated that he can stand for two to three minutes before he falls. (*Id*. at 63.) Plaintiff further stated that has fallen a couple of times, and once broke his arm due to a fall. (*Id*. at 53.) In addition, Plaintiff stated that doctors have tried to treat his vertigo and disequilibrium with medication, but it has only made the problem worse. (*Id*. at 51.) Plaintiff stated that balance therapy did not help "at all." (*Id*.) Plaintiff fears further falls. (*Id*. at 63.)

The ALJ's decision ignored Plaintiff's statements regarding his difficulties with balancing, and simply concluded that Plaintiff can frequently balance and does not require an assistive device. Furthermore, the ALJ failed to identify which statements he was rejecting. The ALJ cannot discredit Plaintiff's symptom testimony without first identifying

which of Plaintiff's statements are found incredible. *Contreras v. Saul*, 477 F.Supp.3d 1107, 1122 (S.D. Cal. 2020) (holding that because the ALJ failed to identify which statements he found as incredible, the ALJ's summary of the medical record and opinion evidence were legally insufficient to discount Plaintiff's credibility).

Therefore, the Court finds the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's subjective statements.

## VI.  CONCLUSION

The last question for the Court is whether to remand for further administrative proceedings or for the payment of benefits. "The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). A remand for an immediate award of benefits is appropriate only in rare circumstances. *Leon v. Berryhill*, 874 F.3d 1130 (9th Cir. 2017). The Court concludes that "[t]he rare circumstances that result in a direct award of benefits are not present in this case." (*Id*.)

Instead, the Court finds that further administrative proceedings would serve a meaningful purpose so that Plaintiff's subjective statements may be properly evaluated. On remand, the ALJ must provide clear and convincing reasons for the weight given to Plaintiff's statements as outlined above. Based on the foregoing reasons, the Court **VACATES** the ALJ's decision and **REMANDS** this case for further administrative proceedings consistent with the findings presented herein.

**IT IS SO ORDERED.**

Dated:  January 16, 2024

Hon. Steve B. Chu
United States Magistrate Judge